Our final case on today's calendar is Bwon v. Spindler. All right, Mr. Goldman, you have ten minutes, but you've reserved two minutes for rebuttal. You may proceed. Thank you, Your Honor. Your Honor, may it please the Court, Jonathan Goldman from the Law Office of Sussman & Associates on behalf of the Plaintiff Appellant, Dr. Lisa Bwon. The District Court's order dismissing the amended complaint with prejudice should be reversed and vacated because the amended complaint adequately pleads Dr. Bwon's Title VII and Section 1983 race and national origin discrimination claims, and having a meritorious complaint that with prejudice dismissal was particularly erroneous and to the extent service was improper on any party, any such defects in service should be permitted to be cured at this moment. It's important to address the merits first, I think, because the District Court explicitly stated that the reason that he was dismissing the case with prejudice as opposed to without prejudice, as Rule 4M would require if it's just a dismissal for insufficient service, was because he found that the complaint failed to adequately plead the discrimination claims. Right. No, clearly. So this is a 12B6 appeal, but there is a difference, you would agree, between Title VII and the 1983 claims just with respect to exhaustion, right? That's correct. There is. There's no exhaustion requirement for Section 1983, and to the extent the District Court found that there was a failure to exhaust on two specific adverse employment actions, that analysis does not apply to Section 1983. We think... So what are the adverse employment actions that you're focused on for the Title VII, and how does that differ from the 1983? Well, we focus on the same three. We think both three satisfy adverse employment action for Title VII in 1983, and that's the... But if there's an exhaustion problem, the one for Title VII is the RISE program. That one you had, it was in the EEOC complaint, it was exhausted, and you're arguing that that was... That she did not get that position based upon her race and ethnicity, right? That's correct, Your Honor. And then there's also the denial of being the administrator for the summer school program and the removal... And if there's an exhaustion problem, those could only be explored under 1983, right? Yes, Your Honor. That's what the... The summer school and the removal as principal would have to be under 1983. They would certainly satisfy 1983, and they are there under 1983, and we argued to this court, in the interest of justice, it should find that under the Butts case, the denial of the summer school program and the removal from the SMS principalship are reasonably related to the allegations set forth in the EEOC claims such that they are considered exhausted. Does it make any difference whether it's Title VII or 1983 in terms of the elements or proof? Assuming everyone's acting in the color of law here. Exactly. So I would answer that in two ways. One, for the motion to dismiss analysis, there's really no difference because, as this court said in Vega, other than the color of law element, the Title VII and 1983 claims are evaluated in tandem, and for the same reasons that they would satisfy the pleading standards for one, they would satisfy the other. But there are a few different elements as we go forward. There's a lower standard of causation for Title VII, which is why we think it's important that those claims be reinstated under Title VII, even though we still have them for 1983. And there's no qualified immunity issues under Title VII that there would be under Section 1983, which might arise later. So we understand that we have all three claims under 1983. We understand that the district court said two of the claims were not exhausted, but we would ask this court to find that they're deemed exhausted as reasonably related to the claim that was exhausted for Title VII, so that we have all three adverse actions going forward on both claims. One of the things the district court ruled on was that, and I just want you to focus specifically on the rise position, that it does not rise to a level of adverse action and cited in no circuit cases, the number of district court cases for that proposition, that an additional position is not enough. What's your response to that? With all due respect to the district court's analysis there, I think that conclusion is antithetical to Title VII and the civil rights laws. And the expressed purpose of refusing to hire, refusing to promote, those are clearly adverse actions. You have a position here, the RISE program, the summer school program, but RISE in particular. It's a salaried position. It's a salaried position, exactly. It's a $30,000-a-year stipend. Yeah, otherwise you've got to be a lifeguard or something in the off-season. So when you have something that substantial, it's a discreet position. The school district is clearly hiring for it. It's akin to a failure to hire or a failure to promote. And as this court has said, other indices, you need to ... There could be a position, though, that was like some extracurricular activity that would not necessarily rise to the level, but here you plead it is a paid position. I think you pled in paragraph 49 that it's about $30,000, right? That's correct, Your Honor. It's quite a substantial paid position. And it's something ... So some of those cases I'm suggesting might be distinguishable on their facts also because of the nature of those positions, right? I think they are. And in fact, in our brief, in our opening brief, we cite, as Your Honor noted, the district court cited other district court cases, but we found district court cases that seem to support our position and disagree with the district court's analysis. So a lot of those cases are issues of denial of overtime and whether or not a denial of overtime is or is not adverse, right? That's correct. And I think that's a good analog for the rise. It's an opportunity to earn additional income by doing additional work and performing additional responsibilities beyond what your regular job is. And it's something that the school district was seeking to hire and fill with ... All right. And on the issue of her qualifications, you say she had performed the job previously successfully, correct? That's correct, Your Honor. And that the person who got it, you say, did not hold a school-based job, was new to the central office administrator role. Those are the allegations, am I accurate on that? That's correct, Your Honor. It's in paragraphs 52 and 53. Why does that matter? I'm sorry? Why do those last two matter? It's not clear to me that that would be a distinguishing factor in the rise job. Well, I think it does go to the qualifications of somebody administering a program that deals with supervising students in a school-based environment. Somebody who's a principal and who's run the program before in an effective way, as a matter of fact, is much better qualified, I think, for that. And I think it's a factual dispute. I mean, you could argue either way to a jury for sure, but at the pleading stage, what's as the appellant. But more importantly, and this really is dispositive for the motion to dismiss analysis under Vega and Littlejohn, it's alleged that the person who was hired is outside of the protected classes. And as this court noted in Vega and Littlejohn, a minimal inference of discrimination, of discriminatory intent is on that need be alleged at the pleading stage, and it has found sufficient that alleging that the person who was chosen to fill the position or who replaced the plaintiff is outside of the protected class, the decadent of itself is sufficient. What about on the principal? When she got removed as principal, did they argue that she was replaced by a black individual? So don't you have an issue there? For two reasons I don't think we do. One is that there's not an allegation that the person who replaced her was also West Virginians, that she was discriminated on the basis of national origin. So even if the court were to find she was replaced by somebody of the same race, she was still not replaced by somebody who was within the same national origin. But beyond that, that replacement came after she filed an EEOC charge claiming race discrimination. And a jury, I think, a reasonable jury, could find that they chose a replacement of the same race as cover. Why would they, if they chose a pleading- Forget about reasonable jury. You're only at the pleading stage, so you don't have to worry about that yet. Exactly. It's whether or not it's enough from a pleading standpoint, right? That's exactly right, Your Honor. I think that same inference would apply here on the pleading. Anything else that would support an inference of discriminatory intent? The mosaic bits and pieces of information, as this court acknowledged in Vega, is sufficient. Here there's the complaint is replete with instances in which the appellant alleges that she was treated in a harsh and disparate manner, different from those of the non-African-American, non-West Indian principals. She was required to respond to calendar invitations within 24 hours. That wasn't applied to anybody else. She had to tell her students they couldn't dress up for Halloween, and all the other students in the district, it's alleged, were allowed to. Who looks like the bad person now? She had to prove that she was going to go to a wedding, where a white principal wasn't required to prove that he was going to a wedding. His say-so was enough for the superintendent. I could go on and on. It's detailed in our complaint. It's even detailed in the district court's outline of the facts in the district court's order. But I think those, coupled with the fact that she was replaced or others outside her protected class were chosen for the position, is sufficient under Little, John, and Vega. I've seen that. I've gone over. But if I could just address service real quickly, Your Honors, if you have any questions. All right. I'm sorry? All right. Just the main point on service is that, to the extent that the court agrees that there was insufficient service— Well, the district court didn't go off on service, right? The district court went on service on the individuals, and then it didn't read service on the district. I don't understand. There was an amended complaint. I don't understand why the service issue isn't moved. You've got permission to file an amended complaint. So why does it matter whether the first complaint was properly served or not? Isn't it moved? I would agree with that, Your Honor. Not only did we get permission, it was on consent of the other side. So what? Okay. So, with that, unless there's any other questions on that, it's, I think, sufficiently argued in the brief. All right. Thank you. You've got two minutes to rebuttal. Thank you, Your Honor. We'll now hear from Ms. Collins. Good morning, Your Honors. Deanna Collins, Silverman & Associates for the Defendant's Appellees. May it please the Court. To address Mr. Goldman's points with respect to the Title VII claims, preliminarily, we would note, with respect to the Adverse Act element, the claims regarding the denial of the RISE administrative position and the summer school positions. Isn't that denial, at least plausibly, an adverse action? I mean, it was a $30,000 position. No, Your Honor, because as we cite in our papers, there are, the case law precedent establishes that even when . . . But not from this Court. Not from this Court, Your Honor. From the lower court. So, that's the ballgame in this . . . I mean, there may be cases where an additional position is not that meaningful, but is it not plausible here, under all the allegations in the complaint, including $30,000, that it could turn out to be a material adverse action? Not with respect to the terms and conditions of Dr. Vaughan's employment as a middle school principal. As a middle school principal, there were no expectations that she would be, for example, entitled to . . . It's not a matter of entitlement. If there's a position that's available, and she applies for it, and it's a $30,000 increase, I don't think you can find any case, in any circumstance, I would say, at the motion to It doesn't matter whether it's an additional position or not. If you become chairman of a department, for example, and it's a $30,000 increase in your salary, no one would ever suggest that it's not adverse if you're denied that position based upon your race. What we posit, Your Honor, is that this is not a new position. This is an additional job responsibility that included an additional stipend. It's the money, though, that makes it a material change in your employment. Not necessarily whether it's a new position, an additional position, that's just labeling. It's a $30,000 job that she could have had. Which would have been available only to those who were already employed by the district as an additional stipend position. So if they give overtime to everybody, and a particular employer says everyone can have $30,000 worth of overtime, but not certain employees based upon their race, you're saying that we would hold that that's not adverse, and therefore there's no Title VII claim? No, Your Honor, if the job description included, as you indicated, that everyone would be entitled to overtime. No, it's discretionary overtime. It's discretionary overtime, but we're going to do it based upon race. You would say it's not adverse because it's discretionary? If the overtime, in your example, were customarily given to individuals, then yes, it would be a part of the terms and conditions of that claim. Can you move on to why, if it is adverse, plausibly adverse, why there's not enough with respect to that position to plausibly suggest it was based upon our race? You heard what the, we went through the allegations with them, can you address that, why that's not enough at the motion to dismiss stage? With respect to any sort of discriminatory intent? Yeah, at the motion to dismiss stage, they're saying someone got that position who was not of the same race as she is, that she had done it effectively, successfully, and that her qualifications were better. Why isn't that enough? Because, Your Honor, the pleading fails to show that the individuals who obtained the position were of the same race and similarly situated employees in any material respect to the plaintiff. The pleading consists of conclusory allegations such as that Dr. Vaughn was, quote-unquote, qualified for the position and that the others were... Well, you're not disputing that she was qualified, right? We're not disputing that she was qualified for the position, we dispute that the pleading  Well, the only distinction made, I think, for the RISE program was that this is a person who didn't work, you know, wasn't a principal and didn't work, worked for the central office as opposed to the, in a school, right? That's correct, but there's no plausible inference that we can glean from those allegations that would enable us to determine at the motion to dismiss stage that the individual would not be qualified simply because they hold, they held a position in the central office versus a school-based position. But what about the fact that she successfully did the job? Isn't that, isn't that important? There are no other allegations in the complaint that the other individual who was not hired did not successfully complete a similar program or had a similar program. You're not saying that she hasn't alleged that she's qualified, you're saying there's insufficient allegations to conclude that the comparators were less qualified. That's correct, Your Honor. Okay. What about the, I think there, I'm counting nine allegations of disparate treatment that allegedly were because of RISE? So the other additional allegations in the complaint that I believe counsel referred to as the bits and pieces, they, counsel attempts to refer to those instances in order to support an inference of discrimination. That's what we do in discrimination cases. We look at the different pieces and see whether they can lead to an inference of intent to discriminate. Correct, Your Honor. In this case, however, again, the complaint lacks the sufficient allegations to show similar comparators or similar situated individuals. For example, the mere fact that Dr. Spindler was, was recently hired. I mean, just for example, she, you know, asking for a vacation days, the allegation is that it was harder for her to ask for vacation days than, than for a white principal. She was given deadlines to respond to invitations for meetings when others were not required. The Halloween costumes, and they're just at least nine of them. Yes, Your Honor. But those examples don't point to anything to do with an individual's race. There are, while it may be conceivable that, conceivable, plausible, we, we don't contend that the allegations are sufficiently plausible enough to nudge over the line. There are multiple other explanations, for example, for those bits and pieces, those nine other allegations that Your Honor references, which are obviously conceivable in order to jump over the hurdle into plausibility, we argue, it has not been pledged. If I could address the service issue. Actually, before you do that, just for the summer school, we've talked about the rise position, but the summer school, what did that entail and how much money is involved in that? So, the summer school position, again, like the rise position, was a stipend position that would, that was not necessarily, that was not a part of the terms and conditions. Does the complaint allege how much the stipend was? I don't have that offhand, whether it was how much it was, but we acknowledge that there was an additional monetary component to it. We contend that that monetary component is not relevant, because simply as a middle school principal, the terms and conditions of that employment did not entail her or entitle her to achieve additional job responsibilities, including additional stipend responsibilities. And either the- Well, I think your point is that if the rise program doesn't count, then the summer school is not going to count. That's correct, Your Honor. Well, keep using the word entitled to, but that's not what makes something adverse or not. You could not be entitled to a lot of things. You could be not entitled to training. It doesn't, if it's still then done on the basis of race, it can affect the terms and conditions of employment. Even if it's not part of your, in your job description, you're entitled to particular things. Do you disagree with that? I don't disagree with that, Your Honor. But I would argue that with respect to additional stipend positions, like the two that we have the example of here today, it's not the same as a failure to hire for a brand new position. What the court needs to, we posit the court needs to consider here is that the positions need to be understood in terms of additional job responsibilities, because someone off the street just can't apply for the position. They have to be a qualified individual already employed by the district in order to be the summer school principal, for example, or have to be the RISE program administrator. The allegations in the complaint, while possibly prolific about how plaintiff was subjective, how plaintiff subjectively thought of them as adverse to her, herself, are not sufficient to show that they were materially adverse to the terms and conditions of her employment as a middle school principal. Well, I know you wanted to get to the service, and I had a couple of questions there, so go ahead, please. Thank you, Your Honor. With respect to service, I would note, as we put forth in our papers, that this issue has been brought to the attention of plaintiff and then plaintiff's counsel after she obtained counsel on numerous occasions. There were two pre-motion letters in which this issue was raised, as well as two motions to dismiss briefings in which this motion was- If you consented to an amended complaint, which I think you did, why would they go back and serve the complaint that's no longer operable? I don't understand that. In order to obtain personal jurisdiction over the defendants to begin with, you would have to have proper service. And proper service in this case would include, of course, service of the complaint. The complaint was never served, the defendants never waived service to the extent that- First of all, that would be without prejudice, and the district court made no determination as to the district itself. So, ultimately, this case is going to rise or fall. Even if we would agree with you on that point, he would get to serve the now operable amended complaint, right? Plaintiff would be able to serve- It would be without prejudice, so he would have to get an opportunity. And there's not even a finding that he didn't properly serve the first one on the school dish. But in any event, he would certainly be entitled to serve the amended complaint on everybody, right? He would be able to re-serve, that's correct, your honor. Okay. You're saying that there's been no service at all for certain of the individual defendants. We actually argue that there's been no proper service for any of the defendants. The school district or the two individually named defendants. And that is because, number one, no complaint was served. It was the summons, the package contained the summons only in a list of individuals. No complaint was actually included in that package. There's no dispute they eventually got the complaint though, right? There's no dispute that, obviously, the defendant appellees are aware of, obviously, the complaint since we've moved to dismiss. As well on 12B2 and 12B5 grounds. If once there's a case going, if there's an amended complaint, do you accept service on behalf of all the clients or would you make them re-serve? If we said it's without prejudice, it should have been without prejudice, would you make them re-serve? Because the defendants hadn't appeared to begin with after the service of, or the attempted service of the first complaint, there was no acceptance of service with respect to the amended complaint, it was filed only. Okay. All right. Thank you very much. Thank you. We'll now hear from Mr. Goldman for two minutes. Thank you, Your Honor. Just a couple of quick points. On service, I agree with Judge Bianco. The amended complaint, the counsel had appeared and the amended complaint was consented to, it was served via ECF as all interlocutory subsequent documents are served. Right, but your view is you don't have to serve people, they don't have to appear, but if you amend, then that takes care of it all? I think in this circumstance where counsel consents to the amended complaint being filed- But she could consent to the filing of the complaint, but technically say you still have to serve them, right? I understand what you're saying, and that's why I was asking her. I think most counsel would just say, you don't have to serve them, I'm in the case, I have it. But as a technical matter, she could say even though it consented to filing the complaint, we want you to properly serve them, right? I understand that point, but even if that's the case, and we go back to the fact that to the extent the complaint is sufficient on the merits, the dismissal must be without prejudice if it's dismissed. Was there any kind of stipulation of reserving objections to service or anything like that? I don't believe there was a stipulation that set forth the parameters of the consent of the amended complaint. I think we just had put it in a letter to the district court that we're in the case now. The plaintiff was formally pro se. Her process server, she averts that the process, she gave the process server their summons and complaint. His affidavit of service says that he uses the court approved form that only uses the word summons and it doesn't use the word complaint. And that's the proof of service form that's attached to the district court summons form, and that was the affidavit of service. But under 4M, even if service was improper, the district court must do one of two things. Either dismiss without prejudice or give additional time to serve. And here, we would respectfully request that if the court agrees that the complaint has merit as to the discrimination claims, it should not just remand for dismissal without prejudice because now the statute of limitations on the title seven claim has run. And while there's a three year statute of limitations on the section 1983 claim, the bry's denial accrued in January of 2019. So but for the erroneous with prejudice dismissal, we would have been able to cure that deficiency at the time. We're out of time on that now. And then the SMS, South Middle School removal claim and the summer school claim arose in May of 2019. That expiration is fast approaching. So we would respectfully request that the court vacate the dismissal, remand with permission to serve, reserve, or deem serve non-pro-tunk on all the claims. Thank you, Your Honors. All right, thank you both. We will reserve decision. That concludes our arguments for today. We have nothing else on submission.